## Danan et al. v. Hemberger et al.

*Nuisance—Coalyard in residential district—Zoning ordinance.*

1. A coalyard is not *per se* a nuisance.

2. In the absence of a zoning ordinance, the court has no authority to restrain inartistic and unsightly structures lawfully erected, or to interfere with private property rights for purely æsthetic purposes.

3. Where the basis of the complaint upon which the bill for an injunction was based was that the operation of the coalyard, by reason of the dust, noise and dirt from coal-cars, etc., would cause annoyance to neighboring properties, which alleged grounds for apprehension were denied by defendants, the court refused a preliminary injunction without prejudice and ordered the bill to be retained, so that plaintiffs might proceed to final hearing, with the right to renew the application for an injunction should the operation of the coalyard become a nuisance in the future.

Rule for preliminary injunction. C. P. No. 3, Phila Co., June T., 1924, No. 6234.

*H. Moskowitz*, for plaintiffs; *Saul, Ewing, Remick & Saul*, for defendants.

MARTIN, J., specially presiding, July 31, 1924.—Complainants are owners and occupiers of dwelling-houses situated on the west side of Seventh Street, between Ruscomb Street and Lindley Avenue, in the City of Philadelphia. The defendants, Charles Hemberger, Andrew Hemberger and Henry Hemberger, own the ground on the east side of Seventh Street, extending from Ruscomb Street to Lindley Avenue, bounded on the east by the North Penn Railroad.

They have employed the Spencer Construction Company, the other defendant, to build upon their land five circular reinforced concrete silos of the storage type, twenty feet in diameter and seventy-five feet high, with a wooden loading platform for storage of coal. Excavations have been made and the work of construction begun.

Complainants filed the bill in equity in this case, averring that the neighborhood is residential, occupied by dwelling-house or neighborhood stores and dwellings attached, with the exception of a building on the north side of Rockland Street, bordering the railroad; that they complained to defendants and stated their objections to the erection of the coalyard. Complainants aver in their bill that they will suffer irreparable damage by the operation of this plant, which will be attended by a great amount of noise, inconvenience and danger to residents of the neighborhood from the movement of heavy trucks, noise of shifting coal-cars and stopping and starting of locomotives; that the operation will be a nuisance by reason of consequential noises and confusion, deprive complainants of the comfortable and lawful use and occupation of their dwellings, and diminish the value of their properties.

There is a prayer for an injunction to restrain defendants from erecting and maintaining a coalyard or any building for a similar purpose.

A rule was granted to show cause why a preliminary injunction should not issue.

At the hearing testimony was submitted by complainants and also for defendants. The locality was visited and examined by the chancellor.

Seventh Street is opened to, but not beyond, Lindley Avenue, north of which point the land is unimproved, forming an embankment high above the level of the street. Upon the west side of Seventh Street, opposite to defendant's lot, the two-story residences occupied by complainants are located. To the south and west for several blocks the neighborhood is residential; but complainants' houses are at the northern end of this residental development in that locality.

The houses are new and have been owned and occupied by complainants for periods varying from four months to one year.

Danan et al. *v.* Hemberger et al.

The lot owned by defendants was unimproved. At the northern end there is an open sand or gravel pit. The tracks of the North Penn Railroad adjoin the lot and form its eastern boundary. The proximity of the land to the railroad, which adjoins it on the east, renders it better adapted for business purposes, in which a siding will be available, than for the erection of dwellings. There are no dwelling-houses along the west line of the railroad south of defendants' land.

Upon the north side of Lindley Avenue, west of Seventh Street, there is a large brickyard and a public garage. On the east side of the North Penn Railroad, opposite the property of defendants, there is a coalyard, and on the north side of Lindley Avenue and east side of the railroad another coalyard is in operation. There is also a factory with a siding from the railroad on the east side, opposite defendants' property, and another commercial plant on that side of the railroad, where pitch is stored and sold, and a public garage and storage station south of Lindley Avenue and on the east side of the railroad.

The testimony presented on behalf of complainants disclosed apprehension of discomfort to be caused by dust, dirt and unseemly noises by the operation of the coalyard, which, in the opinion of their witnesses, will diminish the value of their properties.

Seventh Street from curb to curb is twenty-six feet wide, and the width is fifty feet from house-line to house-line. The tracks of the North Penn Railroad are 112 feet east from the curb-line of Seventh Street.

Complainants testified that they expect to get a whole lot of dust, noise and dirt from the coal unloaded from cars, and noise from loading wagons and running the wagons in and out all day, and the shifting cars and noise from loading and reloading the bins, and from shifting of engines that bring the cars, and noise of handling the coal by engines and dumping, and of trucks passing their doors, as there is no other outlet from the coalyard except Seventh Street; that there will be dust from the coal and the cars that carry the coal. Objection is made to the unsightly appearance of the proposed stacks in front of complainants' homes; to trucks running backward and forward in the street, shifting of cars, and "a lot of other noises," also fear of danger to children from trucks running up and down the street. Noise caused in the construction at the present time was objected to by a witness, who complained that it prevents his baby sleeping in the afternoons, which noise is occasioned by unloading trains of gravel upon the premises and hammering. Several of the complainants described visits to observe the operation of a coalyard conducted by the Craig Coal Company at Wayne Junction. One of these witnesses stated that he is in the engineering business, and when shown the plan of the structure to be erected by defendants, stated that "the outline looks exactly like the one I saw— . . . the one at Wayne Junction, somewhere; I think it is the Craig Coal Yard; I am not sure." He described that operation as causing a tremendous noise by traveling cranes and coal conveyors, and stated he could hear it about one block away, also that there was tremendous dust. Another witness testified, when shown the plans, that they indicated operations upon the same principle as the coal plant in the Craig Coal Yard, where there was a continuous noise caused by dumping the coal in the chute and unloading it from the chute, and that dust and dirt was flying over the platform. A witness described the noise at the Craig Coal Yard caused by running of a motor, unloading of the coal from stacks into trucks, the running of the trucks down the driveway into the street, and added that considerable coal does not go right from the chute into the pockets

Danan et al. *v.* Hemberger et al.

or into the trucks, but falls on the platform and beneath the platform, is collected in an open heap on the premises and sifted, which makes a noise, and that dirt accumulated from trucks going in and out of the yard, spreading dirt around the driveway in the street.

One of the defendants testified that the structure to be erected by them is different from every other coal-bin, and that there is none in the city like it; that the whole thing is enclosed and dust-proof.

The general manager of the Spencer Construction Company testified that the five reinforced concrete silos of the storage type were designed on an entirely new principle, differing from the ordinary coal-pocket, inasmuch as the structure is to be entirely enclosed by reinforced concrete, made noiseless and dust-proof by being enclosed; that there is a sprinkling system all around the outside, but no sifting plant, such as that operated in the Craig Yard, and no arrangement to dump coal on the ground, as all the coal will be in the silos; that there will be no dust or dirt; the system employed will absolutely eliminate dust; the plant will be noiseless and dustless, and is specially designed for the purpose of eliminating noise and dust.

None of the deeds to the properties involved contain building restrictions or limit the use and occupation by the owner.

A coalyard is not *per se* a nuisance. The testimony presented by defendants is to the effect that the operation of the yard in the method planned by defendants will not constitute a nuisance. Should the apprehensions of complainants be later realized, application for a restraining order may be made when occasion arises for an injunction to restrain the operation.

In the absence of a zoning ordinance, the court has no authority to restrain inartistic and unsightly structures lawfully erected, or to interfere with private property rights for purely esthetic purposes.

It is damage from the operation of the coalyard that is apprehended by complainants, rather than complaint against construction of the plant.

The land owned by defendants may be aptly described as a railroad property and its natural development is for business purposes in which the railroad facilities at hand will become available. When complainants purchased their houses, the ground owned by defendants was vacant, but its location and the character of the properties in similar proximity to the railroad to the north and south of defendants' land would reasonably indicate its commercial use and the improbability of the erection of dwellings upon it.

In the light of the testimony presented, the irreparable injury apprehended is of damages arising in the future from the operation of the coalyard. The evidence of complainants was based upon experience gained by a visit to the Craig Coal Yard, which defendants' witness declared was different from the plant to be erected by defendants, in that their plant eliminates all the objectionable features of the Craig plant.

It is a possible contingency that the sanguine expectations of the construction engineer employed by defendants may not be realized. If the yard becomes in its operation a nuisance, a court of equity will afford complainants an adequate remedy.

And now, to wit, July 31, 1924, the rule for a preliminary injunction is discharged without prejudice, and it is ordered that the bill be retained; that complainants may proceed to final hearing, with the right to renew the application for an injunction should the operation of the coalyard become a nuisance.